UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 OCT 26 PM 1:23

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SANDRA KILGORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 01-BU-0154-S |
| | ) | |
| BARLOWORLD HANDLING LP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | ENTERED |
| | ) | |
| | ) | OCT 26 2001 |

## MEMORANDUM OPINION

Plaintiff Sandra E. Kilgore ("Plaintiff") filed this case against her former

employer, Defendant Barloworld Handling LP ("Barloworld" or "Defendant") (formerly

known as Wrenn Handling, Inc. and as Brungart Equipment Company). Plaintiff alleges

that Barloworld interfered with the free exercise of her rights guaranteed under the

Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA"), and that

she was terminated as a result of exercising said rights. See Doc. No. 1. This matter is

before the Court on Defendant's motions (1) for summary judgment on all counts, see

Doc. No. 20, (2) to strike certain of Plaintiff's claims for damages, see Doc. No. 2, and

(3) to deem facts admitted, see Doc. No. 34. The Court, having carefully reviewed the

35

record and the parties' submissions, finds that Barloworld's motion for summary judgment is due to be GRANTED in part, and DENIED in part.  Barloworld's motion to strike is due to be GRANTED, and Barloworld's motion to deem facts admitted is due to be GRANTED as well.

## I. BACKGROUND[1]

Plaintiff is a thirty-six year old female.  She was hired by Barloworld (then known as "Wrenn Handling") at its Birmingham, Alabama facility on July 1, 1986, as a service secretary.  In 1996 she was promoted to the position of rental coordinator, a post which she held until she was terminated on October 1, 1999.  On that date, Barloworld notified Plaintiff that her employment was terminated for excessive absenteeism and tardiness,[2] in

---

[1]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record.  These are the 'facts' for summary judgment purposes only."  Underwood v. Life Ins. Co. of Georgia, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998) (quoting Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)).

[2]Inherent in Plaintiff's claim that she was terminated in retaliation for her exercising her FMLA rights is the notion that she was not terminated on account of her long-standing history of irregular attendance, but rather because of her taking leave on the particular isolated days in question.  As the Defendant correctly points out in its motion to deem facts admitted, Plaintiff fails to dispute this fact, along with almost all others, properly.  Despite the pellucid mandates included in this Court's Appendix A, instructing that a party must cite record evidence in order properly to dispute a fact, Plaintiff's Opposition Brief contains nary a citation.  See, Appendix A, II(4)(b)(i)(6).  As a result of Plaintiff's failure to direct the Court to evidence in the record demonstrating the existence of a disputed issue of fact, Defendant's facts as stated in its brief are deemed "admitted" for purposes of this motion.

The Plaintiff's admission on this score would, alone, be fatal to its FMLA retaliation claim.  As will be discussed below, however, even if Plaintiff had disputed properly the Defendant's motivation for terminating her employment, her retaliation claim would fail due to infirmities in her prima facie case.

violation of Defendant's stated employment policies.[3]

Plaintiff's attendance history during her thirteen years at Barloworld appears to have been checkered. On October 1, 1996, Plaintiff received an annual performance appraisal indicating that her "tardiness and absenteeism are a concern," also rating her "less than expected" in the category of "Dependability–Abides by Company policies, procedures, attendance rules." On September 22, 1997, Plaintiff received an annual performance appraisal indicating that she met the company's expectations in all categories. This improvement appears to have been temporary, for on March 1, 1998, Bob Campbell ("Campbell"), Defendant's Birmingham Branch Manager, verbally counseled Plaintiff about her taking "too many sick days and/or unexcused absences . . .[the] [m]ajority [of which] seem to occur on a Monday or Friday." Due to "this ongoing problem," Plaintiff's status was changed from salaried employee to hourly employee, and Plaintiff was concomitantly rendered ineligible for the company's "bonus program." Consistent with this mid-year reprimand, Plaintiff's annual performance appraisal dated September 30, 1998 called attention to her attendance record. Included with the

---

[3]Barloworld has several written policies covering various aspects of employee attendance. As Plaintiff does not dispute her history of attendance troubles at Barloworld, the only company policy relevant to the instant litigation is the "Sick/Personal Leave Pay" policy. This policy provides:

> The employee should schedule the personal day at least twenty-four hours in advance when possible. *If the necessity to take a personal day cannot be scheduled in advance, i.e., a child wakes up sick requiring the employee to stay home, the employee should notify his/her supervisor before the scheduled work time.*

See, Doc. No. 21 (emphasis added).

evaluation was a written reprimand from Campbell concerning Plaintiff's "days absent

from work." However, noting an improvement in attendance from her mid-year record,

Plaintiff was changed back to salaried status.

After September 30, 1998, Plaintiff's absenteeism rate accelerated. Plaintiff was

out on November 11 and 12, 1998, and January 22, 25, 26, February 8, 22, and April 19,

22, 26, 1999. On April 30, 1999, Campbell gave Plaintiff a second written reprimand due

to her "excessive days absent from work" and the fact that she "never called Branch

Manager when [she has] taken off." In the written reprimand, Plaintiff was instructed

that,

> When you are not going to be at work, [the] Branch Manager
> must be notified. . . . Future sick days will require a written
> doctors [sic] excuse, vacation and personal days are to be
> scheduled and approved by Branch Manager in advance.
> There will be no further warnings. Employment will be
> terminated if this problem continues.

After the April 30, 1999 warning, Plaintiff resumed her pattern of absenteeism.

She called in sick on June 1, August 30, September 7 and 8, and was late on July 26,

August 24, 25, 26, 27, and September 20, 21, 29. On none of these post-April 30

absences or days late did Plaintiff contact Campbell directly. Generally Plaintiff

contacted Mr. Ted Burrell ("Burrell"), Barloworld's Service Manager, or Burrell's

secretary, Glenda England ("England"). After the April 30 written warning, Campbell

met with Plaintiff on various occasions to counsel Plaintiff about her continuing

absenteeism and her continuing failure to contact him on such occasions.

On the morning of Thursday, September 30, 1999, Plaintiff's husband was ill and had been vomiting blood. Initially Plaintiff left for work, but returned home to help her husband get medical attention. Shortly after 8:00 A.M. Plaintiff attempted to call Burell in order to report her situation, but instead spoke with one of the service secretaries.[4] Plaintiff told the secretary that her husband had been throwing up blood and that she was staying with him to make a doctor's appointment. Plaintiff asked that the secretary tell either Burrell or Campbell about Plaintiff's situation, and the secretary responded that she would let one of them know. It appears that Burrell had not arrived at work yet. Campbell was paged, but did not respond to the page.

Later that morning, Plaintiff's sister, Sheila Bird ("Bird") called Barloworld on her sister's behalf. Bird spoke with England. She stated that Plaintiff had taken her husband to the emergency room. England testified that she relayed this information to either Campbell or Burrell, but was unsure as to whom. At around 9:00 P.M. that evening Plaintiff called England at her home. In this conversation, Plaintiff told England that she had been in the ICU with her husband, that he was being given blood, and that the second operation performed on her husband had been completed. Plaintiff told England that she would not be coming to work the following day, as she had to care for her husband. It is unclear exactly how or to what extent the facts surrounding Plaintiff's situation were

_____

[4]It is not clear whether Plaintiff actually spoke with Samantha Dutton, the Assistant Service Secretary, or Glenda England, the Service Secretary.

communicated to Campbell or Burrell. However, it is undisputed that, by the end of the

aforementioned events of Tuesday, September 30, all Campbell knew of Plaintiff's

situation was that Plaintiff had missed work because her husband was "sick." Burrell was

somewhat better informed, having been told by England that Plaintiff had called and that

"she had to go home for some reason . . . [England] thought that [Plaintiff] had told her

that her husband was sick . . . and had to go to the hospital."

On the morning of Friday, October 1, Campbell decided to terminate Plaintiff,

after having conferred with Burrell. Campbell states that at that time, he had no

knowledge of Plaintiff's husband's condition, other than the lone fact that he was "sick."

Campbell left a message on the Plaintiff's answering machine stating, "Sandra, this is

Bob. Don't bother coming back to work until you've talked with me."[5] It is unclear from

the record at what time Campbell made the phone call. On the same day, also at an

unspecified time, Plaintiff's brother-in-law, James Bird, telephoned Barloworld and asked

the receptionist to speak with one of Plaintiff's supervisors. James Bird's call was

transferred to Tracy Miller, the Shop Foreman at the Birmingham branch of Barloworld.

James Bird told Miller that Plaintiff was in the hospital with her husband who was "not

doing well." Miller responded "don't worry about it, tell her we'll take care of

everything, everything's fine." Miller never communicated to Campbell that he received

_____

[5]As with all of the other facts in this case with which Plaintiff appears to take issue,
Plaintiff responds to Barloworld's's account of this termination phone message by stating only
"denied." In this instance, Plaintiff's improper denial is especially baffling given that her version
of this occurrence is identical to Barloworld's.

James Bird's phone call.

On the evening of Friday, October 1, Plaintiff went home and listened to the message Campbell had left earlier, terminating Plaintiff's employment. She first called England at her home to ask about her employment status. England suggested that Plaintiff call Burrell at home, which Plaintiff then did. Burrell explained that, earlier that day, Campbell had made clear to "everyone" at Barloworld that he was firing Plaintiff.

Plaintiff then called Campbell at home, explaining that she had been in the ICU in the emergency room with her husband, and that her husband had nearly died. Campbell told Plaintiff that she was fired, and Plaintiff hung up the phone. Plaintiff called Campbell again on the night of Saturday, October 2. The conversation was acrimonious. Campbell remarked, "there was a lot of cussing and vulgarness directed at me by Ms. Kilgore, and [I] hung up the phone." Plaintiff called Campbell at home a third time on Sunday, October 3. Campbell reiterated that Plaintiff no longer had a job at Barloworld, and told her not to call him at his home again. On Monday, October 4, Plaintiff called Jimmy Haynes, Barloworld's Regional Operations Manager and Campbell's superior. Haynes was sympathetic with respect to Plaintiff's situation. Haynes spoke with Campbell about the decision to terminate Plaintiff's employment. Satisfied that Campbell had counseled Plaintiff sufficiently regarding her attendance problems, Haynes told Plaintiff that he would not disturb Campbell's decision.

Subsequently, Plaintiff filed this action on December 1, 2000. Plaintiff charges

that Defendant Barloworld is liable under the FMLA for "denying her rights" guaranteed under that statute. Plaintiff also charges that Barloworld terminated her employment in retaliation for her having exercised said rights. The Court will discuss each of Plaintiff's claims in turn.

## II. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for the motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996); see also Resolution Trust Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden on the district court

to distill every potential argument that could be made based upon the materials before it

on summary judgment."), cert. denied sub. nom., 516 U.S. 817 (1995).

Once the moving party has satisfied its initial burden, the nonmoving party "must

make a sufficient showing to establish the existence of each essential element to that

party's case, and on which that party will bear the burden of proof at trial." Howard v.

BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual

dispute requires submission to a jury, a district court must view the record in the light

most favorable to the nonmoving party and resolve all reasonable inferences in the

nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing

Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

## III. DISCUSSION

In her complaint, Plaintiff alleges that Barloworld "denied [her] benefits and rights

under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., in that she

was denied leave to which she was entitled under the FMLA and her employment

terminated." See Doc. No. 1. Nowhere in Plaintiff's complaint or brief in opposition to

summary judgment does Plaintiff specify precisely under which provisions of the FMLA

she maintains her suit. The Eleventh Circuit recently stressed the essentiality of analytical

limpidity in FMLA suits in Strickland v. Water Works and Sewer Bd. Of the City of

Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001). Therefore the Court will examine

Plaintiff's potential causes of action under the FMLA at the outset.

Among the substantive rights granted by the FMLA to eligible employees are the right to "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of such employee," 29 U.S.C. § 2612(a)(1), and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position, 29 U.S.C. § 2614(a)(1). See, Strickland, 239 F.3d at 1206. To preserve the availability of these rights, the FMLA creates two types of claims: interference claims, and retaliation claims. See id.; see also, King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999).

Under Section 2615(a)(1), a plaintiff may bring a claim against an employer for improperly interfering with her right to take federal leave. Under Section 2615(a)(2), a plaintiff has a cause of action against employers who discriminate against any employee who attempts to exercise her rights under the FMLA. This latter cause of action is the proper avenue for a plaintiff alleging that she was terminated in retaliation for having engaged in activity protected under the FMLA. See, Strickland, 239 F.3d 1206-07; While the considerations relevant to these two analyses overlap to some extent, they are by no means coextensive. The Court will treat the Plaintiff's complaint as making both claims under the FMLA–that Barloworld interfered with her exercising her rights under the FMLA, and that Barloworld terminated her because she exercised such rights.

A.      Interference Claim

Pursuant to 29 U.S.C. § 2615(a)(1), a plaintiff may bring a claim pursuant to the

FMLA for an employer improperly interfering with his or her right to take medical leave. An employer who interferes with, restrains, or denies exercise of any right to leave under the FMLA is liable and is subject to a claim for compensatory damages and, unless the court finds the violation occurred in good faith and the employer had a reasonable belief it was not violating the FMLA, additional liquidated damages. 29 U.S.C. § 2615(a)(1); 29 U.S.C. § 2617(a)(1)(A); 29 C.F.R. § 825.220(c).[6]  Godwin v. Rheem Manufacturing Co., 15 F. Supp. 2d 1197, 1205 (M.D. Ala. 1998).

In order to establish entitlement to FMLA benefits, Plaintiff must prove that, (a) Defendant is a "covered" employer and Plaintiff a "covered" employee, 29 U.S.C. § 2611(2); (b) Plaintiff's husband had a "serious health condition," 29 U.S.C. § 2612(a)(1)(C), 29 C.F.R. § 825.112(a)(3), 29 C.F.R. § 825.1149(a)(1); and (c) Plaintiff properly notified Barloworld of her need for leave.  See, e.g.,Slaughter v. American Building Maintenance Co. of New York, 64 F. Supp. 2d 319, 324 (S.D.N.Y. 1999); Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1203 (S.D. Cal. 1998).   To prevail on a claim alleging interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.  Strickland, 239 F.3d at 1207 (11th Cir. 2001) (citing O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353-54 (11th Cir. 2000)).

---

[6]Punitive, loss of job security and mental distress damages are not recoverable under the FMLA.  See Graham v. State farm Mutual Ins. Co., 193 F.3d 1274, 1284 (11th Cir 1999); McAnnally v. Wyn South Molded Products, Inc., 912 F. Supp. 512, 513 (N.D. Ala. 1996).  It is for this reason that Defendant's motion to strike, Doc. No. 2, is due to be granted.

Before assessing the merits of Plaintiff's interference claim it is important to clarify the nature of the Plaintiff's specific claim and the effect of her proving an entitlement. In some interference cases, an employer will have attempted to stymie a plaintiff's attempts to exercise her FMLA rights. This can be done by providing her with misinformation, meeting her requests with inordinate delays, or setting up other kinds of roadblocks intended to prevent her from taking the leave to which she is entitled. See, e.g., Schober v. SMC Pneumatics, Inc., 2000 WL 1231557, *6 (S.D. Ind.) (employer failed to respond to requests regarding FMLA leave, failed to consider absences as FMLA-qualifying, giving misinformation regarding the completion of FMLA paperwork, failing to give plaintiff proper notice of the FMLA certification deadline, and other certification-related informational deficits).

In the instant case, Plaintiff's exercise of her FMLA rights was not actually prevented, or even "interfered" with, as the term is colloquially used. Plaintiff actually did take off from work on September 30 and October 1 to care for her husband. Instead, Plaintiff was terminated *after* leave was taken. The gravamen of this claim is that the Plaintiff was not reinstated to her former position or its equivalent, a substantive right guaranteed by the FMLA. See 29 U.S.C. § 2614(a)(1).

The employee's right to reinstatement is not absolute. An employer can deny the right to reinstatement if it can demonstrate that it would have discharged the employee had he not been on FMLA leave. See 29 C.F.R. § 825.261(a); O'Connor, 200 F.3d at 1354 (citing Ilhardt v. Sara Lee Corp., 118 F.3d 1151, 1157 (7th Cir. 1997) (holding an

employer may terminate an employee on FMLA leave as part of a RIF)).  Therefore, even

if Plaintiff can demonstrate that she was entitled to FMLA leave and that Barloworld

interfered with her taking said leave by not reinstating her, Barloworld may assert the

defense that it refused to reinstate Plaintiff for a reason wholly unrelated to the FMLA

leave in order to escape liability.

    1. Notice

    Barloworld does not dispute that it is a covered employer, that Plaintiff is a

covered employee, or that Mr. Kilgore's health condition on the days in question was

"serious."[7]  Barloworld instead argues that it was under no obligation to reinstate Plaintiff

because she failed to provide proper notice of her need for FMLA leave.  While the

FMLA explicitly provides for the requisite notice in situations where the need for the

employee's leave is *foreseeable*, <u>see</u> 29 U.S.C. § 2612(e)(1) & (2)(B), it is silent as to an

employee's notice obligations when the need for leave is *unforeseeable*.  It is undisputed

that Mr. Kilgore's blood-vomiting and kidney failure on the morning of Thursday,

September 30, was an unforeseeable emergency situation.  Proper notice in such a

situation is governed by the regulations:

> (a) When the approximate timing of the need for leave is *not
> foreseeable*, an employee should give notice to the employer
> of the need for FMLA leave *as soon as practicable under the
> circumstances of the particular case*.  It is expected that an
> employee will give notice to the employer within no more

---

[7]The FMLA covers not only leave taken by the employee for her own illness, but also
leave taken to care for a spouse.  <u>See</u> 29 C.F.R. § 825.112(a)(3).

than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.  In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, *written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.*

(b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means.  Notice may be given by the employee's spokesperson (*e.g.*, spouse, adult family member or other responsible party) if the employee is unable to do so personally.  The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.  The employer will be expected to obtain any additional information required through informal means.  The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303 (emphasis added).  What is "practicable," both in terms of the notice and its content, will depend upon the facts and circumstances of each individual case.  The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.  Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995).  See also, Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997) ("the employee need only provide [his] employer with notice sufficient to make the employer aware that [his] absence is due to a potentially FMLA-qualifying reason").

Barloworld argues that an employer may require an employee to follow certain

procedures for requesting FMLA leave, and that an employee who fails to comply may not be found properly to have availed herself of her FMLA rights. This Court disagrees. Under 29 C.F.R. § 825.303(a), it is clear that an employer may not require an employee who is tending to a medical emergency to follow internal "written advance notice" policies. Defendant cites to 29 C.F.R. § 825.302(d) for the proposition that "[a]n employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." Defendant seems to suggest that this passage provides statutory authority for an employer's having the right to enforce internal procedures that are more restrictive than the "as soon as is practicable" standard limned at Section 825.303(a). Section 825.302, however, provides for the type of notice an employee must give an employer when the need for FMLA leave is *foreseeable*. It is undisputed that Mr. Kilgore's kidney failure and hemorrhaging was an unforeseeable medical situation. In cases such as this, Section 825.303 covering employee notice when the need for FMLA leave is unforeseeable applies. In addition, the third sentence of Section 825.302(d) states: "However, failure to follow such employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." This provision merely allows an employer to require an employee *who has already taken leave* to explain, perhaps in writing, the nature of the leave as soon as it is possible for the employee to do so. If the employer may not deny the employee the right to take the FMLA leave due to noncompliance with its policies to the contrary, then surely it may not refuse to reinstate

the employee for the same reason.  Section 825.302 does not apply to the case at bar, and even if it did, would not allow Barloworld to have terminated Plaintiff for having failed to follow company procedure.   Defendant's reliance on Section 825.302(d) for this purpose is therefore misplaced.

Defendant also cites to Holmes v. The Boeing Co., 1999 WL 9760 (10th Cir. 1999) as authority for a grant of summary judgment based on insufficient notice under the FMLA.  In *Holmes*, the Tenth Circuit affirmed the district court's grant of summary judgment where it was undisputed that plaintiff failed to comply with defendant's FMLA leave requirement that he "speak directly to his supervisor or representative" on the day that leave would be taken.  The *Holmes* court stated that, "The FMLA does not prohibit an employer from requiring its employees to give notice to specific company supervisors on the day the employee is going to be absent in a *non-emergency* situation . . .."  Id. at *3 (emphasis added). *Holmes* is plainly inapposite to the instant situation, as it dealt with a non-emergency situation–the plaintiff in *Holmes* suffered from an ulcer which had caused him to miss several weeks of work prior to the days at issue in the litigation.[8]  Mr. Kilgore's internal bleeding, by contrast, was an emergency requiring multiple surgeries and an overnight stay in the emergency room.  At one point in the day on Thursday, September 30, his doctors thought that he might die.  Whether an employer may require

---

[8]In addition, *Holmes* is an unpublished opinion, and therefore carries no precedential weight beyond the doctrines of res judicata and collateral estoppel.  See U.S. Ct. App. 10th Cir. Rule 36.3.  Of course, even if it were a published opinion, it would not be binding precedent on this Court.

employees to comply with "advance notice" procedures in non-emergency situations is irrelevant to the instant case. Where there is an emergency situation, the law requires only that the employee provide the employer notice "as soon as practicable under the facts and circumstances of the particular case." The Court finds that even if Plaintiff did not comply with Barloworld's reporting policy, see supra note 3, it is irrelevant given that 29 C.F.R. 825.303 provides the exclusive standard for evaluating an employee's notice to an employer of the need for FMLA leave where such need was unforeseeable.[9]

Plaintiff's notice to Barloworld cannot be deemed deficient as a matter of law solely because she reported her dilemma to England, a secretary, as opposed to Campbell, her primary supervisor. As discussed above, Barloworld can not require that employees give actual notice to supervisors in all cases. In addition, nothing in the FMLA dictates that a plaintiff must directly notify his or her supervisor, manager or any particular agent of the employer. See, e.g., Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1210 n.2 (S.D. Cal. 1998) ("In their undisputed statement of the facts the parties make much of the issue of which supervisors knew what about [plaintiff's son's] condition and when. Such a debate is irrelevant. Nothing in the FMLA dictates that Plaintiff needed to call his supervisor or mangers."); Sims v. Alameda-Contra Costa Transit Dist., 2 F. Supp. 2d

---

[9]It is not clear that the written company "Sick/Personal Leave Pay" rule is even an accurate representation of Barloworld's policy. The written policy states that when the need to take a personal day arises unexpectedly, an "employee should notify his or her supervisor before the scheduled work time." In his deposition, however, Campbell was asked whether that rule would have to be amended so as to read "when possible" at the end of the sentence in order to be totally in compliance with company policy. Campbell responded "yes."

1253 (N.D. Cal. 1998) (finding that where employee called in to work and told the dispatcher that he "needed to be put on the sick book," and went in to sign the "sick book," notice was given "as soon as practicable"). The only relevant inquiry is whether Plaintiff gave Barloworld notice as soon as was practicable under the circumstances–notice that would have given Barloworld reason to investigate further into the Plaintiff's family medical emergency.

Plaintiff first called Barloworld shortly after 8:00 A.M. on the morning of September 30. She asked to speak with both of her supervisors--Burrell and Campbell–and neither was available. Burrell had not yet arrived at work, and Campbell did not respond to his pager. Plaintiff specifically asked that England, the secretary, pass her message to either Burrell or Campbell. She mentioned specifically that her husband was throwing up blood, and that she needed to help get him medical attention. If this were the only communication from Plaintiff to Barloworld, it would likely have satisfied the Plaintiff's notification burden.[10] However, it was not the only notice provided by Plaintiff to Barloworld. Several hours later, Plaintiff's sister called Barloworld on Plaintiff's behalf. Section 825.303(b) expressly provides that such notice can be given by a "spokesperson" of the employee if the employee is unable to do so personally.

_____

[10]It also appears that Plaintiff's communication might have satisfied Barloworld's internal policy regarding notice, in that Plaintiff called at around the beginning of her shift and attempted to speak with either of her supervisors. Given Barloworld's responses discussed supra, note 8, Barloworld does not appear to interpret its policy strictly to require that an employee secure actual notice to a supervisor in every situation. Plaintiff's notice in the instant case appears to have been reasonably calculated to give actual notice to appropriate Barloworld representatives.

Plaintiff's sister spoke with England, mentioning that Mr. Kilgore and Plaintiff were in the emergency room together. England testified that she did in fact communicate the content of that message to either Campbell or Burrell. Plaintiff called England at home that night to keep her abreast of her husband's progress. During that phone call Plaintiff told England that her husband had been operated on and had been treated in the ICU. She also mentioned that she would not be able to come in to work the following day, Friday, October 1. It is unclear whether this second message from Plaintiff, the third message overall, was communicated to either of Plaintiff's supervisors. Finally, Plaintiff's brother called a fourth time on Friday, speaking with Tracy Miller, the Shop Foreman. Plaintiff's brother reiterated that Mr. Kilgore and Plaintiff had been in the hospital emergency room; Miller assured Plaintiff's brother that "everything would be fine." It is unclear whether this fourth communication was received prior to Barloworld's terminating Plaintiff. It is undisputed that Miller did not communicate the content or fact of the phone call to either Burrell or Campbell.

Defendant argues that Campbell, Plaintiff's primary supervisor, knew only that Plaintiff's husband was "sick" prior to terminating her, and cites to authority that such meager information about an employee's reason for leave renders such notice deficient as a matter of law. See, e.g., Gay v. Gilman paper Co., 125 F.3d 1432 (11th Cir. 1997) (affirming summary judgment for the defendant where the employee provided false information regarding the reasons for his spouse's absence); Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973 (5th Cir. 1998) (court affirmed summary judgement for the

employer and held that plaintiff's report to store manager that she was "having a lot of pain" and plaintiff's mother's report that she was "sick" were not sufficient notice to trigger Wal-Mart's obligation to investigate further). While those cases are useful for analyzing the sufficiency of the content of the employee's message to the employer, they are not controlling on the issue of whether Barloworld, as the "employer," might be deemed to have received adequate notice otherwise.

In the instant case, it is undisputed that Plaintiff provided abundant detail about her need for FMLA leave, particularly when all three or four[11] communications from Plaintiff are taken in the aggregate. Plaintiff mentioned that her husband had been throwing up blood, that he was in the emergency room, and that he had been operated on. England, the service secretary, knew all of these details. Tracy Miller, the Shop Foreman, knew that the Kilgores had been in the hospital. Burrell knew that Mr. Kilgore had to be hospitalized.[12] Burrell and Campbell conferred prior to Campbell's terminating Plaintiff. Campbell alleges that all that he knew regarding Plaintiff's husband was that he was

---

[11]It is unclear whether the notice given to Tracy Miller by Plaintiff's brother was received before or after Campbell terminated Plaintiff. An employee cannot give notice that he needs FMLA leave after he is terminated or resigns. See, e.g., Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999) (resignation); Brohm, M.D. v. JH Properties, Inc., 149 F.3d 517, 523 (6th Cir. 1998) (termination). Therefore it is possible that this last communication would not factor into the notice calculus.

[12]An employee mentioning a hospital stay may reduce the amount of information sufficient to serve as notice. See, e.g., Bryant v. Delbar, 18 F. Supp. 2d 799, 806 (M.D. Tenn. 1998) (finding that where employee stated "My son is in the hospital and I've got to work things out" the employer had sufficient "concrete" information to recognize the possibility that FMLA leave was involved); Vincent v. Wells Fargo Guard Services, Inc., of Florida, 3 F. Supp. 2d 1405, 1420-21 (S.D. Fla. 1998) (plaintiff's wife's advising employer he was being hospitalized was sufficient notice).

"sick." Whether the ample information provided by Plaintiff all reached Campbell is not

dispositive of her interference claim. In any event, a reasonable jury could find that

Plaintiff's communications were sufficient to put her employer on notice that Plaintiff's

leave was FMLA qualifying. Indeed, most courts have found that such a determination is

particularly well-suited to jury determination. See, e.g., Price v. City of Fort Wayne, 117

F.3d 1022, 1026 (7th Cir. 1997); Hopson v. Quitman Co. Hospital and Nursing Home,

Inc., 126 F.3d 635, 640 (5th Cir. 1997) (foreseeable leave case governed by 29 C.F.R. §

825.302); Zawadowicz v. CVS Corp. and XYZ Corp., 99 F. Supp. 2d 518, 529 (D.N.J.

2000); Pendarvis v. Xerox Corp., 3 F. Supp. 2d 53, 56 (D.D.C. 1998). Even if there is

undisputed evidence, rational triers of fact could differ on whether Plaintiff's notice was

adequate. See Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1209 (S.D. Cal. 1998)

(citing Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 976 (5th Cir. 1998)).

    2. Reinstatement

    As noted above, if Barloworld can demonstrate that it refused to reinstate Plaintiff

for a reason wholly unrelated to the FMLA leave, it can escape liability. See Strickland,

239 F.3d at 1208. Defendant appears to argue along these lines: "On Friday morning

[October 1], Mr. Campbell made the decision to terminate Plaintiff for excessive

absenteeism and tardiness." See Doc. No. 21. Nowhere, however, does Barloworld

argue that it would have fired Plaintiff even if she did not take off from work on

September 30 and October 1. Indeed, Barloworld argues that the sole reason it refused to

reinstate Plaintiff was because of this final "unexcused" absence–that Plaintiff's two

missed days were the proverbial straw that broke the camel's back.  The problem with

Barloworld's reasoning is that the "straw" is one that cannot be weighed against the

Plaintiff, as her leave on September 30 and October 1 was FMLA-covered.  See Bryant v.

Delbar Products, 18 F. Supp. 2d 799, 809 (M.D. Tenn. 1998) (holding that defendants

may not rely on plaintiff's protected leave as a justification for her termination).

Barloworld has not proffered any reason for terminating Plaintiff wholly unrelated to her

two days of FMLA leave.  As Plaintiff has demonstrated that she was likely entitled to

FMLA leave for the two days at issue, summary judgement is due to be denied as to

Plaintiff's interference claim.

B.     Retaliation Claim

           To succeed on a retaliation claim, an employee must demonstrate that her

employer intentionally discriminated against her in the form of an adverse employment

action for having exercised an FMLA right.  Strickland at 1207 (citing King v. Preferred

Technical Group, 166 F.3d 887, 891 (7th Cir. 1999)).  When a plaintiff asserts a claim of

retaliation under the FMLA, in the absence of direct evidence of the employer's intent,

the courts apply the same burden-shifting framework established by the Supreme Court in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for evaluating Title VII claims.

See Strickland, 239 F.3d at 1207 (citing Brungart v. BellSouth Telecomm. Inc., 231 F.3d

791, 798 (11thCir. 2000)); see also Godwin v. Rheem Mfg. Co., 15 F. Supp. 2d 1197,

1209 n. 14 (M.D. Ala. 1998) (collecting cases).  In order to state a claim of retaliation, an

employer must allege that: (1) he engaged in a statutorily protected activity; (2) he

suffered an adverse employment decision; and (3) the decision was causally related to the

protected activity. <u>Parris v. Miami Herald Publ'g Co.</u>, 216 F.3d 1298, 1301 (11th Cir.

2000); <u>Earl v. Mervyns, Inc.</u>, 207 F.3d 1361, 1367 (11th Cir. 2000) (citations omitted).

It might be assumed that Plaintiff's giving notice of an intent to take FMLA-

qualifying leave, and taking such leave, constitute statutorily protected activity. It is also

undisputed that she was terminated. Thus, the only element of the Plaintiff's prima facie

case that remains at issue is the causation element.

To prove causation, an employee must show, at a minimum, that the decision

maker was aware of the employee's protected activity. <u>See</u> <u>Strickland</u>, 239 F.3d at 1207-

08 (quoting <u>Brungart</u>, 231 F.3d at 799) ("[a] decision maker cannot have been motivated

to retaliate by something unknown to him"). This inquiry may be relevant to determining

whether the Plaintiff's notice to the employer comported with the statutory requirements,

but need not depend on that determination. In the instant case, Plaintiff has presented

sufficient evidence that she gave sufficient notice as soon as  practicable under the

circumstances in order to overcome summary judgment on her interference claim.

However, Plaintiff admits that Campbell had no knowledge of Mr. Kilgore's illness other

than that he was "sick." Indeed, Plaintiff even speculated that Campbell did not know

that she was asserting FMLA rights, and that, had he known, she did not believe that he

would have terminated her employment. As Plaintiff has failed to adduce any evidence

which would satisfy the causation element of her prima facie retaliation case, summary

judgment for Barloworld is due to be granted on that claim. <u>Strickland</u>, 239 F.3d 1207-

08.

IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendant Barloworld's motion

for summary judgment (Doc. No. 20), is due to be GRANTED with respect to Plaintiff's

retaliation claim, the Court finding no genuine issue of material and triable fact as to such

claim, and that Defendant is entitled to judgment as a matter of law thereon.  Defendant's

motion for summary judgment is DENIED with respect to Plaintiff's interference claim,

the Court finding genuine material and triable issues of fact as to such claim.

Barloworld's motion to strike certain of Plaintiff's claims for damages (Doc. No. 2) is due

to be GRANTED, see supra note 6.  Barloworld's motion to deem facts admitted (Doc.

No. 34) is due to be GRANTED.

DONE and ORDERED this 26th day of October, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE